PROFESSIONAL SERVICE
INDUSTRIES, INC.,
Plaintiff,

v.

W. David KIMBRELL and Janet
Kimbrell, Defendants.

No. 90–1326–C.

United States District Court,
D. Kansas.

Feb. 7, 1991.

William A. Bonwell, Jr., Susan Ellis, Bonwell, Foster, Irby & Ellis, David E. Bengtson, William R. Smith, Hershberger, Patterson, Jones & Roth, Wichita, Kan., John J. Thomason, Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard & Adams, Memphis, Tenn., for plaintiff.

John J. Jurcyk, Jr., McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on a number of motions: defendants' motion for partial dismissal for lack of subject matter jurisdiction (Dk. 9); defendants' motion to transfer or reassign the case to Kansas City, Kansas (Dk. 11); defendants' motion to dismiss for failure to plead fraud with particularity or, in the alternative, for more definite statement (Dk. 13); defendants' alternative motion to transfer or reassign case to Topeka, Kansas (Dk. 21); defendants' motion to dismiss plaintiff's amendment to complaint for declaratory relief, or in the alternative, to stay plaintiff's claim for declaratory relief (Dk. 45); defendants' motion to dismiss complaint, or in the alternative, to stay proceedings (Dk. 71); and defendants' joint motion to stay proceedings pending ruling on diversity jurisdiction under 28 U.S.C. § 1332 (Dk. 83). During this apparent lull in the defendants' motion practice, the court hopes to resolve many of the pending motions. Oral argument would not materially assist the court in deciding the issues.

Plaintiff, Professional Services Industries, Inc. ("PSI"), brings this breach of contract action against David and Janet Kimbrell, former principal shareholders of Hall–Kimbrell Environmental Services, Inc. ("Hall–Kimbrell"), a corporation purchased by PSI on January 1, 1990. Among its business activities, Hall–Kimbrell provides

inspection, testing and consultation services for asbestos removal and abatement. This suit was filed on July 5, 1990, and service on the defendants was accomplished the same day. On August 20, 1990, the defendants filed suit in the District Court of Douglas County, Kansas, asserting various claims arising out of the same contract, a Stock Purchase Agreement, that is the subject of the instant suit, and involving a related Employment Agreement.

The court will briefly address each of the motions in the order of their filing. The court sees no reason to discuss any of the motions in any great detail as most of the issues have been affected by subsequent events or are simply matters of judicial discretion.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (DK. 9)

PSI alleges in the complaint that the Kimbrells made certain warranties and indemnities in connection with the Stock Purchase Agreement that have been breached. Basically, defendants warranted and represented that certain information concerning Hall–Kimbrell's liabilities, claims and obligations were true and correct as of the date made and the date of the agreement. Defendants move to dismiss the action as the claims alleged in paragraphs ten and eleven are not ripe for adjudication. Paragraphs ten and eleven read as follows:

10. Contrary to the warranties and representations made in the Agreement, Kimbrell knew or had reason to know that the Environmental Protection Agency ("EPA") among other things required the Company to inspect wallboard, including sheetrock or drywall, during the course of the Company performing an examination and evaluation of buildings belonging to various school districts throughout the United States in accordance with the dictates of the Asbestos Hazard Emergency Relief Act (AHERA) and the regulations of the United States Environmental Protection Agency pursuant thereto, but that the Company had not complied with that requiriement (sic) and other EPA requirements. In March of 1990, the Company was advised that as a result of its failure to comply with the requirements of the United States EPA with regard to inspections in school districts in the states of Colorado, Utah, and Wyoming, the Company was to be fined in excess of One Million Dollars ($1,000,000.00).

11. In addition to the EPA fines, anticipated costs of redoing the inspections and rewriting previously submitted plans, if compelled to do so by the school districts or the EPA, will cost the Company and therefore PSI millions of dollars.

Defendants believe these damages are "wholly speculative" because the fine has not been assessed and the costs of additional work are only anticipated. PSI aptly responds that the breach of the contract has occurred, that significant sums have been spent defending the EPA claims, and that it is only the amount of the resulting damages which is presently uncertain.

A party seeking to invoke the jurisdiction of the federal courts must meet the threshold requirement of a case or controversy imposed by Article III of the Constitution. While more than an abstract injury must be shown, it is enough if the plaintiff " 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged ... conduct and the injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' " *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (quoting, *inter alia, Golden v. Zwickler,* 394 U.S. 103, 109–110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969)). Timing determines ripeness. *Thomas v. Union Carbide Agr. Products Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985). Eschewing abstract disagreements and premature adjudications, courts do not decide cases based on " 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Id.* at 580–81, 105 S.Ct. at 3333 (quoting 13A, C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3532 (1984)). Questions of ripeness turn on several

factors: the likelihood of the harm occurring; the adequacy of the factual record; and the hardship on the parties caused by not adjudicating the prospective claims. *United Steelworkers of America v. Cyclops Corp.*, 860 F.2d 189, 194–95 (6th Cir. 1988).

The likelihood of harm here is real, imminent, and concrete. First, the plaintiff has incurred costs in negotiating and defending the EPA claims. The prospect of plaintiff's liability to the EPA appears imminent and substantial, particularly since the EPA recently submitted a settlement proposal after months of negotiations between the EPA and representatives of PSI. (Dk. 98, Affidavit of Mark B. Weiland). The result of the EPA proceedings will only affect the extent of damages allegedly sustained by plaintiff, and they will most likely add nothing to the factual record concerning the alleged breaches by defendants. Because the damages alleged in paragraphs ten and eleven are only part of those allegedly caused by defendants' breaches of the Stock Purchase Agreement, plaintiff would be seriously prejudiced by any piecemeal litigation of its claims for breaches of those warranties. The court finds the plaintiff's claims in paragraphs ten and eleven of the complaint are ripe for adjudication.

## MOTIONS TO TRANSFER
### (Dks. 11 and 21)

In two separate motions, defendants request the transfer or reassignment of the case to Kansas City, Kansas or, in the alternative, Topeka, Kansas. Defendants contend all ties to the case are in Lawrence, Kansas, and nothing about the case can be linked to Wichita, Kansas. Defendants reside in Lawrence. Hall–Kimbrell's principal place of business is in Lawrence. The other five former principal shareholders and a number of former employees of Hall–Kimbrell reside in Lawrence. Negotiations for the sale of Hall–Kimbrell occurred in Lawrence. Defendants argue the convenience of the parties and the witnesses is served by having the case transferred to Kansas City or Topeka.

Neither side seems aware of the general rule in the district that intradistrict transfers between cities are not granted except for the most compelling reasons. *Shaw v. The Atchison, Topeka and Santa Fe Railway Company*, No. 88–1074–C, 1989 WL 18796 (D.Kan. Feb. 8, 1989) (1989 U.S.Dist. LEXIS 2067); *Morgan v. Christman*, No. 88–2311–O (D.Kan. Oct. 25, 1988) (1988 U.S.Dist. LEXIS 12061). This rule exists because Kansas is made up of one district and one division.

Although Wichita has no apparent connection to this case, the plaintiff explains that its corporate offices in Dallas, Texas, have jurisdiction over the transaction and Wichita is a more convenient forum for them than Kansas City. Consequently, the court has no basis to disregard as irrational the plaintiff's choice or its reasons. *Hunt v. Haysville State Bank*, No. 89–2481–O, 1990 WL 199373 (D.Kan. Nov. 21, 1990) (1990 U.S.Dist. LEXIS 16479). The deference accorded the plaintiff's choice is great. As to any need for reassignment to another judge, the defendants are reminded that the matters may be tried in any designated city in Kansas subject to need and the court's docket. The court will consider, if made, any request for trial in another city at the time of the status conference. The motions to transfer are denied.

## MOTION TO DISMISS PURSUANT TO
### FED.R.CIV.P. 12(b)(6) (Dk. 13)

Defendants contend the plaintiff has failed to plead with sufficient particularity a claim of fraud or misrepresentation pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. In the alternative, defendants request a more definite state of the claims pursuant to Rule 12(e).

The complaint alleges the defendants misrepresented and failed to disclose certain facts in breach of warranties and representations found in the Stock Purchase Agreement. Even though the plaintiff has not pleaded an affirmative claim for fraud and only seeks relief for breach of the Stock Purchase Agreement, defen-

dants contend Rule 9(b) applies, nonetheless, to any averment of fraud, whatever the theory of the legal duty or the claim for relief.

█ The opening sentence of Rule 9(b) reads: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." On the scope of Rule 9(b), a leading commentary observes:

> By its terms, the particularity requirement in Rule 9(b) applies only to averments of fraud. Since the rule is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules, its scope of application should be construed narrowly and not extended to other legal theories or defenses.

5 Wright & Miller, *Federal Practice and Procedure:* § 1297 at 615 (1990). Consistent with that approach, this court has not enforced Rule 9(b) requirements on pleadings which do not allege fraud as the basis for relief. E.g. *Continental Bank v. Caton*, No. 88–1611–C, 1990 WL 129452 (D.Kan. Aug. 6, 1990) (1990 U.S.Dist. LEXIS 11624) (negligent misrepresentation claim); *Barry v. Petroleum Energy, Inc.*, No. 89–1203–C, 1989 WL 149069 (D.Kan. Nov. 9, 1989) (1989 U.S.Dist. LEXIS 14590) (breach of fiduciary duty claim); and *Tip Top Credit Union v. Cumis Ins. Security, Inc.*, No. 84–1794–C, 1989 WL 107752 (D.Kan. Aug. 10, 1989) (1989 U.S.Dist. LEXIS 11067) (claim to recover under insurance contract covering the fraudulent and dishonest acts of a non-party). The court is comfortable with adding a breach of contract claim to this list.

Plaintiff's response makes clear that its only claims are for breach of contract and that it has no present intention of bringing a fraud claim on these allegations. This is not an instance where the plaintiff is attempting to circumvent Rule 9(b) by seeking relief on the theory of fraud without clearly labelling the claim as based on fraudulent conduct. Here the duty to be truthful is alleged to be entirely contractual in nature. A breach of contract claim should not be transformed into one of fraud merely because an issue or aspect of the alleged breach is the falsity of certain facts that had been warranted as true and complete in the contract. If a contrary rule were followed, many breach of contract cases involving unfulfilled intentions and promises would be subject to Rule 9(b).

In their reply brief, defendants argue for the first time that the complaint fails even to meet the liberal pleading standards of Rule 8(a). This court does not entertain an argument first advanced in the reply brief. Even if the argument were addressed, it would not sustain the relief sought in defendants' motion. Defendants' motion to dismiss or, in the alternative, for more definite statement is denied.

## MOTION TO DISMISS AMENDMENT TO COMPLAINT (Dk. 45) and MOTION TO DISMISS COMPLAINT (Dk. 71)

On October 15, 1990, the plaintiff filed an amendment to its complaint (Dk. 36). The additional allegations outline the employment relationship between PSI and W. David Kimbrell as set forth in the Stock Purchase Agreement and the Agreement of Employment. Plaintiff further seeks a declaratory judgement that Kimbrell had breached both agreements in not devoting his full time, attention and energies to the business of PSI and had not performed his duties on PSI's board of directors thereby constituting a voluntary resignation of his employment.

Kimbrell's lawsuit in Douglas County alleges PSI breached the terms of the Employment Agreement entitling him to declaratory relief from the covenant not-to-compete clause found in that Agreement. Kimbrell also claims PSI and Hall–Kimbrell committed other tortious acts, including interference with contracts, intentional infliction of emotional distress, invasion of privacy, and conversion of personal property. PSI's amendment in the instant case essentially counters the affirmative relief sought by Kimbrell in his state court action. In its motion to dismiss (Dk. 45), Kimbrell argues this request for declaratory relief is more appropriately a counterclaim to the action brought in state court.

Defendants' other motion to dismiss (Dk. 71) makes the related argument that the case should be dismissed or stayed because of the concurrent state court action. Defendants ask the court to defer to the state court and abstain from exercising its jurisdiction in favor of having the entire controversy tried and decided by the state court.

In most instances, this court would find it necessary to discuss extensively the law and facts surrounding both of these motions, but one circumstance makes this case unusual. On December 20, 1990, the Honorable James W. Paddock, District Judge for the Seventh Judicial District of Kansas, issued in Kimbrell's state court action a memorandum decision finding:

This case is before the Court on the Defendants' motion to dismiss the Plaintiff's petition without prejudice or in the alternative to stay proceedings.

The basis for the Defendants' motion is that there is a pending lawsuit filed in the federal court in Wichita on July 5, 1990, involving the same parties and subject matter and that the claims set forth in the instant state court case would constitute a compulsory counterclaim in the federal court case.

The Court has examined the memorandum of the Defendants and agree with the reasoning and law cited.

The Court finds that the Plaintiff's claim filed in this action constitutes a compulsory counterclaim in the previously filed case in the federal court. The Plaintiff would not be prejudiced by presenting his claims in the federal court and such action would prevent multiplicity of litigation.

The Plaintiff's claims in this Court are stayed until the federal court in Wichita concludes the same litigation between the parties or refuses to allow his claim to be tried in that court.

The court has since discovered that Kimbrell's motion to vacate or reconsider that order was denied by the state court on January 25, 1991. The state court's finding that Kimbrell's suit comprises compulsory counterclaims to the federal court action, as well as its order staying the Kim-brell's suit, have essentially eviscerated the defendants' instant motions of any persuasive force.

For example, defendants contend the court should not hear the plaintiff's request for declaratory relief since the same factual issues will likely be decided in the pending state court action. Defendants also believe the court should withdraw itself from any race for res judicata. Neither of these points have any significance now since the state court has issued the stay order.

One issue relevant to both motions is whether the plaintiff's amendment relates back to the date of the original complaint as to give it temporal priority over Kimbrell's state court action. Rule 15(c) provides in pertinent part: "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

■ While the plaintiff's amendment is primarily concerned with the employment of Kimbrell, the Stock Purchase Agreement and the Employment Agreement embody one transaction. Pursuant to the Stock Purchase Agreement, the former principal shareholders, including David Kimbrell, executed individual Employment Agreements with plaintiff. The Stock Purchase Agreement included terms ensuring the principal shareholders' right to employment for one year and imposing a covenant not to compete. Plaintiff's amendment to its complaint simply seeks declaratory relief concerning one additional term to the Stock Purchase Agreement that it already has alleged was breached by defendants and concerning an Employment Agreement that was executed in accordance with the terms of the Stock Purchase Agreement. The defendants do not deny that the employment problems between the parties may be factually related to the plaintiff discovering what it believed were certain liabilities and obligations of Hall–Kimbrell that had not been disclosed as warranted. The court finds that the plaintiff's amend-

ment to its complaint arose out of the same transaction as that pleaded in the complaint. Besides suggesting a causal relationship, the temporal proximity of these events demonstrate the likely and substantial overlap of evidence. The relation back effect of Rule 15(c) should apply here, as it did in *Columbia Plaza Corp. v. Security Nat. Bank*, 525 F.2d 620, 626 (D.C.Cir. 1975), making the plaintiff's amendment the pleading first in time over the defendant's state action.

■ Concurrent jurisdiction with a state court may be declined under the doctrine of abstention. Abstention is the exception, not the rule, and should not be invoked absent exceptional circumstances. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983). Defendants have shown the present case to come within any of the three exceptional circumstances for abstention described in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813–16, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976). There is a fourth situation, "wise judicial administration," recognized in *Colorado River* as a basis for not exercising concurrent jurisdiction, that defendants do assert. The Tenth Circuit recently summarized the law surrounding this exception:

> Even so, we must keep in mind that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* *[Colorado River]* at 818, 96 S.Ct. at 1246. We must "ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of ... jurisdiction," *Cone*, 460 U.S. at 25–26, 103 S.Ct. at 942 (emphasis in original), "with the balance heavily weighted in favor of the exercise of jurisdiction," *id.* at 16, 103 S.Ct. at 937.

The Supreme Court has announced several factors that guide our analysis: (a) which court first assumed jurisdiction over any property; (b) the inconvenience of the federal forum; (c) the desirability of avoiding piecemeal litigation; and (d) the order in which concurrent jurisdiction was obtained. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. We must also consider the adequacy of the state court proceedings to protect the parties' rights, *see Cone*, 460 U.S. at 28, 103 S.Ct. at 941–42, and whether the attempt to invoke federal jurisdiction was done in bad faith, *id.* at 17 n. 20, 103 S.Ct. at 937 n. 20.

*Life–Link Intern., Inc. v. Lalla*, 902 F.2d 1493, 1495–96 (10th Cir.1990). Plugging the facts of the present case into these factors does not yield any exceptional circumstance for surrendering jurisdiction.

■ Neither court has assumed in rem jurisdiction. The inconvenience of the federal court has been the matter of some exaggeration; however, it cannot be overlooked that the state court proceedings in Douglas County would be at least more convenient for defendants and certain witnesses. Convenience alone is not an exceptional circumstance. The federal court action was commenced first, and the filing date of plaintiff's amendment relates back to original complaint. The defendants do not contend that the progress of discovery in state court is ahead of that in federal court. The parties have performed some discovery in federal court despite defendants' repeated efforts to stay discovery. The potential for piecemeal litigation and the adequacy of the state court proceedings likewise favor retaining jurisdiction since the state court has stayed its action. Though the source of law is state, this is not significant because the court is quite familiar with applying Kansas law in diversity cases. In addition, the plaintiff has filed a motion for leave to amend its complaint to add a federal securities fraud claim. The presence of federal law issues militates strongly against relinquishing jurisdiction. *Lalla*, 902 F.2d at 1496. None of these factors present the clearest of justifications for dismissal of the case. Defendants' motions to dismiss, or in the alternative to stay, are denied.

MOTION TO STAY
PROCEEDINGS (Dk. 83)

 Defendants seek to stay the proceedings in this court pending determination of diversity jurisdiction in the case. Defendants believe a substantial question exists whether plaintiff's principal place of business became Lawrence, Kansas, after it purchased Hall–Kimbrell and assumed management of it. Defendants seek to limit all discovery to that issue until the court is adequately informed of the relevant facts and is able to decide the jurisdiction issue. Since the state court proceedings have been stayed, this court sees little reason to bring the litigation to a near standstill. The court also refers the parties to the case of *Woolsey v. Petroleum Production Management,* No. 88–1076–C, 1989 WL 123256 (D.Kan. Oct. 17, 1989), where this court discussed what constitutes the principal place of business of a corporation conducting activities in several states. The defendants' motion is denied.

IT IS THEREFORE ORDERED that the defendants' motion for partial dismissal for lack of subject matter jurisdiction (Dk. 9); the defendants' motion to transfer or reassign the case to Kansas City, Kansas (Dk. 11); defendants' motion to dismiss for failure to plead fraud with particularity or, in the alternative, for more definite statement (Dk. 13); defendants' alternative motion to transfer or reassign case to Topeka, Kansas (Dk. 21); defendants' motion to dismiss plaintiff's amendment to complaint for declaratory relief or, in the alternative, motion to stay plaintiff's claim for declaratory relief (Dk. 45); defendants' motion to dismiss complaint or, in the alternative, to stay proceedings (Dk. 71); and defendants' joint motion to stay proceedings pending ruling on diversity jurisdiction under 28 U.S.C. § 1332 (Dk. 83) are each denied.